UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CR-0023-SEB-DKL-03 |
| | ) | 1:13-CR-0031-SEB-TAB |
| PETER TRUONG, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for the Southern District of Indiana, and Steven D. DeBrota, Senior Litigation Counsel, and A. Brant Cook, Assistant United States Attorney, hereby files its Sentencing Memorandum in Cause Number 1:12-CR-0023-SEB-DKL-03 ("the Indictment") and Cause Number 1:13-CR-0031-SEB-TAB  ("the Information").   The Defendant, Peter Truong, is scheduled to be sentenced on December 9, 2013, for his persistent sexual exploitation of a minor, his facilitation of further sexual exploitation of this same minor by numerous adult men around the world, and his conspiracy with others in possessing material depicting at least one other minor engaged in sexually explicit conduct in the Defendant's home.   This Memorandum will address the relevant sentencing factors to be considered pursuant to 18 U.S.C. § 3553(a).

1

I.   **PROCEDURAL HISTORY**

On February 22, 2012, defendant Peter Truong ("Truong") was charged by Indictment with one count of Conspiracy to Sexually Exploit a Child, in violation of 18 U.S.C. § 2251(a) and (e), and three substantive counts relating to that conspiracy of Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a).  The Indictment relates to Truong's conspiring with several other individuals to sexually exploit a minor boy, named by the pseudonym "Boy 1" in the Indictment.   Pursuant to an arrest warrant issued upon the return of the Indictment, Truong was taken into custody the following day in California where he was visiting family.  On February 7, 2013, an Information was filed charging Truong with Conspiracy to Possess Child Pornography of Boy 1, as well as an additional minor boy named by the pseudonym "Boy 2" in the Information, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  This charge in the Information relates to Truong agreeing with several others to possess images of Boys 1 and 2 engaged in sexually explicit conduct.

On February 7, 2013, a plea agreement between the parties was executed and filed, and Truong appeared in Court and entered a plea of guilty to Conspiracy to Sexually Exploit a Child, in violation of 18 U.S.C. § 2251(a) and (e), and Conspiracy to Possess Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Under the terms of the Plea Agreement under Rule 11(c)(1)(C), the Court would have to accept or reject a sentence of imprisonment falling within a range of 324 to 405 months, followed by a

lifetime of supervised release. The statutory maximum for the offenses of conviction is 480 months.

As discussed in detail below, consideration of the sentencing factors enumerated at 18 U.S.C. § 3553(a) demonstrates the need for a significant, lengthy sentence of imprisonment in order to protect the public from Truong, to reflect the seriousness of his offenses, and to deter others who would follow the his example. The government will request a 405 month sentence of imprisonment, followed by lifetime supervised release.

## II.   THE DEFENDANT'S CRIMINAL CONDUCT

### A.   Newton and Truong's Acquiring of Boy 1

Truong is a citizen of the United States and Australia and a resident of Queensland, Australia. Truong and his domestic partner, Mark Newton ("Newton"), a co-defendant in the Indictment, are the adoptive parents of one child, who is named by the pseudonym "Boy 1" in each of the cases charging them with criminal offenses. During the charged time frame and throughout all instances of his sexual abuse, Boy 1 was a minor living in the care, custody, and control of Newton and Troung.

Newton and Truong initially met in the United States in the late 1990's and shortly after became romantically linked. Beginning in or around 2003, Newton and Truong began exploring options for adopting an infant boy, focusing these efforts primarily internationally. In an effort to smooth the process of either surrogacy or adoption, on February 25, 2004, Newton married

a foreign woman (referred to herein as "Foreign Woman 1") in exchange for her being able to become a United States citizen by virtue of her marriage to Newton. In 2005, after several failed in-vitro fertilization attempts between Newton and several foreign women, Foreign Woman 1 found an advertisement placed by another foreign woman (referred to herein as "Foreign Woman 2") regarding her unborn child. Foreign Woman 2 was allegedly abandoned by her husband who wanted nothing to do with the child. As a result, she decided to place the ad seeking new parents. Foreign Woman 1 contacted Foreign Woman 2, and it was agreed that Foreign Woman 1 and Newton would make the necessary arrangements to obtain the child for a payment of $8,000. Following Boy 1's birth in July 2005, Newton obtained official documents purporting him to be Boy 1's biological father, and presented these to the United States Embassy in the foreign country and obtained a Consular Report of Birth Abroad and a US Passport, making Boy 1 a citizen of the United States. Newton and Truong returned to Australia with Boy 1, and in 2008 Boy 1 was officially adopted by Truong (with Newton maintaining his full parental rights) in Los Angeles County Superior Court. Also in 2008, Newton and Boy 1 became dual citizens of the United States and Australia.

    Newton has consistently maintained to friends, family and government officials that he was the biological father of Boy 1, whom Newton claimed was born from a foreign mother pursuant to a surrogacy arrangement. The above

information concerning the falsity of Newton's claims that Boy 1 was born through a surrogacy was uncovered pursuant to the investigation.

### B.   Initial Investigation

In August 2011, the New Zealand Department of Internal Affairs initiated a forensic search of the seized computer of a New Zealand citizen (referred to herein as "New Zealand Target"), relating to his alleged trading of child pornography over the internet.  Recovered from the computer were chat logs in which the participants discussed Newton, Truong and Boy 1, referring to each by their first names, and discussing that Boy 1 was born in a specific foreign country to a surrogate impregnated by Truong's same-sex partner.  The chats also set forth that Boy 1 had been sexually abused since he was at least four years of age and on multiple occasions by Truong, as well as several other men. The chat participants also discussed that Truong had "live streamed" (played digital files online, without posting/uploading the actual content) video of Boy 1 engaged in sexual acts with another young (approximately five years of age) boy in a shower at Truong's residence.

In older portions of the chat logs recovered on the New Zealand Target's computer, the chat participants discussed in October 2010 that Truong was going to take Boy 1 to Germany to be "swapped" with another boy there in November 2010.  The chat participants were envious that Truong will get to have sex with the German boy, and the boy's father with Boy 1.  Further investigation, in conjunction with German and Australian law enforcement,

established that Newton and Truong did, in fact, travel with Boy 1 to Germany in November 2010, where they met with a German citizen, the father of a five year old boy (referred to herein as "the German boy.")   The German boy was forensically interviewed and confirmed the visit of "Pete, Mark and [Boy 1]," and described Boy 1 as having two dads and no mother.   The German boy detailed that he and Boy 1 had engaged in sexually explicit conduct, and that Boy 1 seemed to know how to do this with no adult direction.   The German boy also said that "the dads" also wanted to engage in sexually explicit with him, but that he refused.

   In this early stage of the investigation, information was also developed from the chat logs that Newton and Truong allowed access to Boy 1 to at least two other men in the United States for the purpose of their engaging in sex acts with him.

In October 2011, Homeland Security Investigations sought and obtained a search warrant for the Los Angeles residence of a relative of Newton's where Newton, Truong and Boy 1 were staying while on a visit to the United States. The search warrant was executed on October 20, 2011, and numerous computers and other digital devices were seized. Much of the data was encrypted. On October 19, 2011, Australian law enforcement searched Newton and Truong's two residences in Australia. At the primary residence, multiple computers and other digital devices were recovered. Large portions of these digital devices were also encrypted. However, a large volume of well-organized travel photos and videos was recovered from the computer, which detailed much of Newton, Truong and Boy 1's travel around the world.

Boy 1 was taken into temporary custody by the Los Angeles County Department of Child Services. Boy 1 initially denied being subjected to sexual abuse by anyone, including his two fathers, Newton and Truong.

As of that point in the investigation (October 2011), no specific criminal activity by Newton or Truong, and no sexual abuse of Boy 1, could yet be directly proven. Newton and Truong were uncharged with any crimes, and remained in the United States while they made efforts to regain custody of Boy 1.

## C. Related Child Pornography Trafficking Investigation and Discovery of Significant, Additional Evidence Relating to Newton and Truong

In October 2010, the United States Postal Inspection Service (USPIS) began an investigation into the commercial worldwide distribution of child pornography via the U.S. Mail and Internet. During this investigation, USPIS investigators learned that individuals located throughout the United States and the world engaged in a child pornography enterprise that utilized various communication means, including Internet Relay Chat (IRC), to communicate about and share child pornography files, as well as file sharing using File transfer Protocol (FTP) to exchange larger volumes of child pornography files. Among the members of the IRC group was a resident of Anderson, Indiana, within the Southern District of Indiana. Search warrants were executed on the various members of the IRC group in October - December 2011. During this investigation, USPIS investigators were able to recover videos and still images depicting Boy 1 engaged in sex acts with John Rex Powell (Powell), a resident of the United States who is charged with conspiracy to sexually exploit Boy 1 with Newton and Truong in the Indictment. Images and videos of Powell engaged in sexual acts with Boy 1 in Florida, California, France and Australia (in Newton and Truong's shared residence) were recovered, some of which were trafficked by Powell to the Southern District of Indiana member of the IRC group. Upon discovery of this evidence, and coordination with international

8

law enforcement partners, the Indictment was brought against Powell, Newton and Truong, and Newton and Truong were arrested in California.

### D. Continuing Investigation

Following the charging and arrest of Newton and Truong, the USPIS investigation of their activities continued. Some months later, Newton and Truong's computer equipment in Australia was decrypted when Truong provided the password and related information. This resulted in the discovery of a video depicting Boy 1 engaged in sexual activity with both Truong and Newton in May 2007 (when Boy 1 was approximately 22 months of age). Boy 1 demonstrated a high degree of sexual awareness in the video, spreading what appears to be a flavored lubricant on Newton's genitals, and then performing oral sex on him. Additional video evidence was uncovered of Newton engaged in sexual activity with Boy 1 on more than a dozen occasions through August 2010 (shortly after Boy 1 turned five years of age).

The further investigation of Newton and Truong's activities with Boy 1 indicated and confirmed that Boy 1 has been made available for sex to approximately eight adult men around the world.

Boy 1 has begun disclosing that Newton and Truong (as well as others) did, in fact, engage in sexual acts with him. The investigation has suggested that Newton and Truong worked consistently with Boy 1 to withhold information from law enforcement and other authorities regarding sexual activity to which he was subjected.

Further investigation also uncovered two additional Australian boys who were video recorded nude while playing with Boy 1 in Newton and Truong's home. One of these boys, named as Boy 2 in the Information, is also video recorded engaged in sexual acts with Boy 1 in Boy 1's bedroom within Newton and Truong's Australian home.

Finally, it was recently confirmed that Newton and Truong engaged in sexual acts with a minor boy in the late 1990's in the United States. This activity was video recorded, and the video recordings were recovered in Newton and Truong's computers during the continuing investigation of Newton and Truong. Newton and Truong are readily recognizable in the video recordings.

### III. RELEVANT SENTENCING FACTORS ENUMERATED IN 18 U.S.C. §3553(a)

In determining a just sentence, the Court is directed by statute to consider a number of factors. 18 U.S.C. § 3553(a). With regard to 18 U.S.C. §3553(a)(1), the details of the nature and circumstances of Truong's offenses are set forth in section II, *supra,* of this sentencing memorandum and the Presentence Investigation Report. It is difficult to overstate the depravity of the criminal conduct in this matter. The details of the victimization of Boy 1 quite simply shock the conscience, and the pattern of psychological, physical and emotional abuse inflicted on Boy 1 amounts to an unimaginable twisting of every principle of parenthood and notion of a duty to protect children. Essentially, Newton and Truong bought a child, falsified the circumstances of

his birth and citizenship, sexually abused him to such a degree and so early in his life that by 22 months old the child's sexual awareness as depicted on video rivals that of an adult.  They groomed Boy 1 to hide the truth from any who may inquire, and then transported him around the world for the purpose of his engaging in sex with more than a half dozen other men, all before his sixth birthday.  This is the nature and circumstances of these offenses: a flat out assault on Boy 1's humanity, through acts that simply cannot be presented as anything other than the worst forms of sexual exploitation of children offenses.

With regard to the Truong's history and characteristics, the long-term nature of his offenses against Boy 1 must be considered, as well as his history of exploitation of other children.  It is true that he has no criminal record - but, simply put, that he managed to avoid being caught during his long period of continual criminal activity, thereby avoiding such a record, should count him little credit.  Thus, his history and characteristics likewise counsel strongly in favor of a significant term of imprisonment.

With regard to 18 U.S.C. § 3553(a)(2)(A), a lengthy sentence of imprisonment would provide "just punishment" for his offenses, promote respect for federal child exploitation laws, and reflect the seriousness of his offenses and child pornography offenses in general.  As noted, Truong's offenses are the worst forms of that class of offenses, and are among the most serious in all of the criminal law.

With regard to 18 U.S.C. § 3553(a)(2)(B), the sentence should be lengthy in order to deter the criminal conduct of any other adults who would ever consider committing similar offenses.  Additionally, and clearly, it is vital to protect the public, and other children, from Truong, and so consideration of 18 U.S.C. § 3553(a)(2)(C) likewise counsels strongly in favor of a lengthy sentence.

### IV.   SENTENCING DISPARITY

This Court gave Newton a 480 month year sentence of imprisonment, which he greatly disserved.  For reasons that will be further explored in a separate motion filed under seal, the government will ask this Court to accept the terms of the Plea Agreement and give Truong a lower sentence of 405 months.  Under the Plea Agreement, the lowest permissible sentence would be 292 months of imprisonment.

### V.   CONCLUSION

In conclusion, the United States respectfully requests that the Court consider the applicable guidelines and the factors of 18 U.S.C. § 3553, including the nature and circumstances of Truong 's offenses, his history and circumstances, the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect against further crimes by him.

The United States therefore requests a 405 month sentence of imprisonment, followed by a lifetime of supervised release.

        Respectfully submitted,

        JOSEPH H. HOGSETT
        United States Attorney

By    s/Steve DeBrota
      Steven D. DeBrota
      Senior Litigation Counsel
      Office of the United States Attorney
      10 W. Market St., Suite 2100
      Indianapolis, Indiana   46204-3048
      (317) 226-6333


      s/A. Brant Cook
      A. Brant Cook
      Assistant United States Attorney
      Office of the United States Attorney
      10 W. Market St., Suite 2100
      Indianapolis, Indiana   46204-3048
      (317) 226-6333

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing United States' Sentencing Memorandum was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Angelyn Gates
Counsel for the Defendant

                  By:    s/Steve DeBrota
                            Steven D. DeBrota
                            Senior Litigation Counsel
                            Office of the United States Attorney
                            10 W. Market St., Suite 2100
                            Indianapolis, Indiana   46204-3048
                            (317) 226-6333